<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL KOBREN, on behalf of himself and all others similarly situated, : : : Plaintiff, : : v. : : A-1 LIMOUSINE INC., MICHAEL STARR, and JEFFREY STARR, : : : Defendants. : : | Civil Action No. 16-516-BRM-DEA **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Compel Arbitration and Stay the Action filed by Defendants A-1 Limousine Inc. ("A-1"), Michael Starr and Jeffrey Starr (collectively, the "Defendants"). (Dkt. No. 23.) Plaintiff Michael Kobren ("Kobren" or "Plaintiff"), on behalf of himself and all others similarly situated (collectively, the "Plaintiffs"), opposes the motion. (Dkt. No. 27.) Having considered the parties' submissions and arguments of counsel, for the reasons set forth herein, Defendants' motion is **GRANTED** in part and **DENIED** in part.

**I.    BACKGROUND**[1]

A-1 operates "the largest independently owned limousine company in New Jersey." (Compl. (Dkt. No. 1) at ¶ 10.) Its fleet includes over 200 vehicles, including lower-weight vehicles designed or used to transport eight (8) or fewer passengers (including the driver) for compensation

---

[1] The facts set forth in this Opinion are taken from the parties' briefs and related filings.

1

(the "Small Vehicles"). (*Id*. at ¶¶ 11-13.) A-1 employs drivers (collectively, the "Drivers" and, individually, each is a "Driver"), whose primary duties include transporting A-1's customers in the Small Vehicles, among others. (*Id*. at ¶14.) During the three-year time period relevant to this lawsuit, Defendants employed at least 300 Drivers. (*Id*. at ¶ 15.)

Plaintiff was employed by Defendants as a Driver from approximately July 2008 until approximately October 2015. (Compl. ¶ 16.) Plaintiff's duties as a Driver included, among other things, operating the Small Vehicles and Plaintiff was paid an hourly wage of $8.38 per hour plus gratuities. (*Id*. at ¶¶ 17-19.)

The Complaint alleges Drivers frequently worked over 40 hours per week, but Defendants failed to pay Plaintiff and/or other Drivers any overtime premium compensation for hours worked over 40 per week. (Compl. ¶¶ 20-21.) Instead, Defendants allegedly paid Drivers (including Plaintiff) only an amount equal to the total hours worked multiplied by the straight-time hourly wage, plus gratuities. (*Id*. at ¶ 21.)

On or about May 22, 2013, A-1 engaged SOI to act as its Professional Employer Organization. (Declaration of Randall C. Schauer, Esq., dated April 22, 2016 (the "Schauer Decl.") (Dkt. No. 23-1) at ¶ 6.) As part of that engagement, A-1, through SOI, obtained an Assigned Employee Notice and Acknowledgements from all its then extant employees, including Plaintiff, and has continued to do so for all subsequently-hired employees. (*Id*.) Plaintiff executed an Assigned Employee Notice & Acknowledgements, dated May 22, 2013. (*Id*. at ¶ 3; Ex. B.)

The Assigned Employee Notice & Acknowledgements Plaintiff executed provides, in pertinent part, as follows:

> I and SOI agree that: Any dispute involving SOI, Company [A-1], or any benefit plan, insurer, employee, officer, or director of SOI or Company (all of which are Beneficiaries of these Acknowledgements) arising from or related to my employment, application for employment, or termination from employment

2

Case 3:16-cv-00516-BRM-DEA   Document 41   Filed 11/07/16   Page 3 of 14 PageID: 320

will be resolved exclusively through binding arbitration before a neutral arbitrator in the capital or largest city of the state in which I work or another mutually agreed location (SOI may appear by phone); The Arbitrator may grant the same remedies that would be available in a court of law (and no more), and will use the same rules of evidence as a federal court; Unless prohibited by law, costs of arbitration will be shared equally by the parties; If applicable law requires provisions in an arbitration agreement, which are different from what is included here, they will be deemed incorporated to the minimum extent required; Disputes will be resolved solely upon applicable law, evidence adduced, and defenses raised, and no other basis, and the arbitrator may grant summary disposition or disposition on the pleadings; The arbitrator will render a reasoned written decision. In addition: I AND SOI MUTUALLY WAIVE ANY RIGHT TO A JURY TRIAL, and I agree to participate in any legal dispute with any Beneficiary only in my individual capacity not as a member of a representative of a class or part of a class action. I understand that nothing herein impairs my right to engage in collective action under Section 7 of the National Labor Relations Act and I am not prohibited from complaining to government agencies or cooperating with their investigations. My agreements to arbitrate, waive jury trials, and participate only in my individual capacity are contracts under the Federal Arbitration Act and any other laws validating such agreements and waivers. No failure to strictly enforce these agreements will constitute a waiver or create any future waivers, and no-one other than counsel for SOI (in writing) may waive this agreement for SOI. If any part is unenforceable, the rest will still be enforceable.

(Dkt. No. 23-1 at Ex. B.)[2]

On January 29, 2016, Plaintiff filed a two-count Complaint. (Dkt. No. 1.)[3] In Count I, Plaintiff asserts, on a collective basis, violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"). (*Id*.) Count II asserted, on behalf of a putative class, violations of the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a, *et seq*., but was dismissed with prejudice pursuant to a Stipulation, So-Ordered by the Honorable Freda L. Wolfson, U.S.D.J. on May 13, 2016. (Dkt. No. 26.)

---

[2] During oral argument, portions of the Employee Notice & Acknowledgements were read into the record by Defendants' counsel and marked as Exhibit D-1 for identification.

[3] Thereafter, Kobren filed a Notice of Consent of Jerry Daniel ("Daniel") to participate as a party plaintiff. (Dkt. No. 13.) On or about May 23, 2013, Daniel, like Kobren, executed an Employee Notice & Acknowledgements. (Dkt. No. 23-1 at Ex. C.) The agreements executed by Kobren and Daniel are identical in all respects material to the instant motion. (Compare *id*. with *id*. at Ex. B.)

Defendants now move to compel arbitration and stay this action based on the arbitration provision in the Assigned Employee Notice & Acknowledgements executed by Plaintiffs. (Dkt. No. 23.)[4] The Court heard oral argument on November 4, 2016. (*See* Dkt. No. 40.)

## II.   LEGAL STANDARD

Federal law presumptively favors the enforcement of arbitration agreements. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. ("FAA"), directs federal courts to compel arbitration of claims "arising out of" a valid agreement to arbitrate.[5] The FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable," subject only to traditional contract principles. 9 U.S.C. § 2; *see also CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 669 (2012) (citations omitted) (explaining the FAA favors arbitration agreements and "requires courts to enforce agreements to arbitrate according to their terms"). The FAA provides that contract provisions manifesting the intent of the parties to settle disputes in arbitration shall be binding, allows for the stay of federal court proceedings in any matter referable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate. 9 U.S.C. §§ 2-4. Cumulatively, those provisions "manifest a liberal federal policy favoring arbitration agreements." *Gilmer*, 500 U.S. at 24 (quotations omitted).

---

[4] After Defendants' motion was fully-briefed, Plaintiff filed four (4) Notices of Supplemental Authority in Further Opposition to the motion to compel. (*See* Dkt. Nos. 28, 31, 36, 39.)

[5] The Employee Notice and Acknowledgements at issue in this action also specifically state that Plaintiffs' "agreements to arbitrate, waive jury trials, and participate only in [their] individual capacit[ies] are contracts under the Federal Arbitration Act…" (Dkt. No. 23-1 at Exs. B-C.)

4

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Townsend v. Pinnacle Entm't, Inc.*, 457 F. App'x. 205, 207 (3d Cir. 2012) (same). Thus, a motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) ("[C]ourts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms.").

In determining whether to compel parties to arbitrate a certain dispute, the court must "engage in a limited review to ensure that the dispute is arbitrable." *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1988). When engaging in this limited review, the court must consider: (1) whether a "valid agreement to arbitrate exists between the parties;" and (2) whether "the specific dispute falls within the substantive scope of that agreement." *Id*. If a party fails to honor an agreement to arbitrate, the court must compel arbitration. *Scherk v. AlbertoCulver Co.*, 417 U.S. 506, 511 (1974).

### III. DECISION

Plaintiff essentially concedes the Employee Notice & Acknowledgements he (and all other Drivers) executed is a valid agreement to arbitrate between the parties but nevertheless argues the arbitration agreement should not be enforced for two reasons. First, Plaintiff argues the class/collective action waiver is invalid and unenforceable because it violates the National Labor Relations Act ("NLRA"). Second, Plaintiff argues that enforcement of the cost-sharing provision would prevent Plaintiff(s) from vindicating his(their) statutory rights. Plaintiff argues these

provisions of the arbitration agreement are unconscionable. The Court addresses each argument in turn.

### A.      Validity of Class/Collective Action Waiver

By executing the Employee Notice & Acknowledgements, Plaintiff "agree[d] to participate in any legal dispute with any Beneficiary only in [his] individual capacity, not as a member or representative of a class or part of a class action." (Schauer Cert., Ex. B.) Plaintiff argues this class-action waiver is unconscionable and unenforceable because it interferes with his right to engage in protected concerted activity under Sections 7 and 8(a)(1) of the NLRA. (Dkt. No. 27 at §§ C-D (citations omitted).)

In *Concepcion,* the Supreme Court addressed the issue of unconscionability of class-wide arbitration waivers in arbitration agreements. 563 U.S. 333. There, the Supreme Court overruled a line of cases that had found class arbitration waivers unconscionable in consumer adhesion contracts because the "disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has ... deliberately cheat[ed] large numbers of consumers out of individually small sums of money." *Litman v. Cellco P'ship,* 655 F.3d 225, 231 (3d Cir. 2011) (discussing *Concepcion's* overruling of the California Supreme Court opinion in *Discover Bank v. Superior Court,* 36 Cal. 4th 148 (Cal. 2005)); *Concepcion*, 563 U.S. at 344 (holding that a state law "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.").

After *Concepcion,* the Third Circuit held the FAA preempts the rule enunciated in *Muhammad v. County Bank of Rehoboth Beach, Delaware,* 189 N.J. 1 (2006) that class arbitration waivers are unconscionable and unenforceable under New Jersey law. *Litman,* 655 F.3d at 231

6

("[C]ontrary to our earlier decisions in *Homa* and in this case, the rule established by the New Jersey Supreme Court in *Muhammad* is preempted by the FAA."). In so doing, the Third Circuit "now endorse[d] the District Court's decision to reject New Jersey law holding that waivers of class arbitration are unconscionable." *Id.* at 232. These cases stand for the proposition that neither individual claims nor class arbitration waivers are unconscionable in the context of consumer adhesion contracts, even when there is a clear disparity of bargaining power and when only small monetary amounts are at issue. Guided by *Concepcion* and its progeny, this Court finds the class arbitration waiver here is not unconscionable even assuming, as Plaintiff contends, the Employee Notice & Acknowledgements is a contract of adhesion. *See Bourgeois v. Nordstrom, Inc.,* 2012 WL 42917 (D.N.J. Jan. 9, 2012) (finding employee/employer adhesion contract where employee had no opportunity to negotiate terms did not, by itself, make the contract unconscionable).[6]

Furthermore, absent binding authority to the contrary,[7] this Court agrees with the reasoning of the Second, Fifth, and Eight Circuits that there is no "inherent conflict" between the FAA and NLRA, particularly in light of the strong public policy considerations underlying the FAA and the general understanding that the NLRA permits and requires arbitration in labor disputes. *D.R.*

---

[6] It is not clear whether any Driver was given an opportunity to review the Employee Notice and Acknowledgements prior to signing or negotiate any of its terms, although the Court notes Plaintiff's assertion that "Defendants' drivers were required to sign the Arbitration Agreement as a condition of their employment and were unable to 'opt-out' or exclude themselves from its terms." (Dkt. No. 27 at p. 2.) However, "[e]ven if Plaintiffs' allegations that the [arbitration] [a]greement was presented on a 'take-it-or-leave-it' basis and that the parties' were of unequal bargaining power are accepted as true, these are not sufficient grounds for this Court to find that the formation of the agreement was procedurally unconscionable." *Bonnano v. Quiznos Master LLC*, 2006 WL 3359673, at *5 (D.N.J. Nov. 17, 2006); *see also Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003) ("An adhesion contract is not necessarily unenforceable.") (citation omitted).

[7] The parties agree the Third Circuit has not yet addressed whether class action waivers violate the NLRA. (*See* Dkt. No. 29, n.2; *see generally* Dkt. No. 27 (discussing circuit split).) Recently, however, on October 5, 2016, the Third Circuit heard oral arguments in *NLRB v. The Rose Group*, Case Nos. 15-4092, 16-1212, an appeal that directly implicates these issues.

*Horton, Inc. v. NLRB*, 737 F.3d 344, 364 (5th Cir. 2013) ("The use of class action procedures … is not a substantive right" but merely a "procedural device."); *see also Patterson v. Raymours Furniture Co.,* 2016 WL 4598542, at *2 (2d Cir. Sept. 2, 2016) (observing the NLRB has "repeatedly concluded that Sections 7 and 8(a)(1) of the NLRA … foreclose enforcement of arbitration agreements that waive an employee's right to pursue legal claims … on a collective basis" but that "[t]he circuit courts, however, are irreconcilably split on the question."); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013) (per curium); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013). These Circuits hold that the right to concerted litigation activity under Section 7 of the NLRA is not a protected substantive right that cannot be waived by an arbitration agreement.[8] This Court likewise finds the class-arbitration waiver at issue is merely a procedural device that can be contractually waived by the parties without infringing upon any of Plaintiffs' statutory rights.[9] Finding no "inherent conflict" between the FAA and NLRA, the Court will enforce the parties' agreement according to its terms. *American Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2309 (2013) (directing lower courts to "rigorously enforce arbitration

---

[8] In fact, the Fifth and Eighth Circuits have reversed the NLRB's rulings on, at least, three (3) separate occasions. *See D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344; *Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013, 1015 (5th Cir. 2015); *Cellular Sales of Missouri, LLC v. N.L.R.B.*, 824 F.3d 772 (8th Cir. 2016). The Seventh and Ninth Circuits, on the other hand, have agreed with the NLRB that contract clauses precluding employees from bringing, in any forum, a concerted legal claim violate the NLRA, and have further held that such agreements are unenforceable under the FAA. *See Morris v. Ernst & Young, LLP*, 2016 WL 4433080 (9th Cir. Aug. 22, 2016); *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016). These Circuits have held that an "illegal" arbitration agreement, one that is unlawful under the NLRA, "meets the criteria of the FAA"s savings clause for nonenforcement." *Id*. at 1157; *see also Morris*, 2016 WL 4433080, at *7 ("when an arbitration contract professes the waiver of a substantive federal right, the FAA"s saving clause prevents a conflict between the statutes by causing the FAA's enforcement mandate to yield.").

[9] The Court also notes that, by executing the Employee Notice & Acknowledgements, Plaintiffs specifically acknowledged that "nothing herein impairs [their] right to engage in collective action under Section 7 of the National Labor Relations Act and [they] a[re] not prohibited from complaining to government agencies or cooperating with their investigations." (Dkt. No. 23-1 at Exs. B-C.)

agreements according to their terms, including terms that specify *with whom* [the parties] choose to arbitrate their disputes, and the rules under which that arbitration will be conducted.") (internal quotation marks and citations omitted; emphasis and brackets in original).

Plaintiff requests, "in the alternative, the Court [] deny Defendants' Motion without prejudice to allow for the NLRB to complete its ongoing investigation of Defendants' use of the Arbitration Agreement." (Dkt. No. 27 at p. 13.) The Court declines to do so. In effect, Plaintiff is seeking an indefinite stay. But a stay "is not a matter of right. It is instead an exercise of judicial discretion, the propriety of which is dependent upon the circumstances of the parties." *Akishev v. Kapustin*, 2014 WL 2608388, at *5 (D.N.J. May 28, 2014) (quoting *Niken v. Holder*, 556 U.S. 418 (2009)) (internal marks omitted). When determining whether a stay should be issued, courts weigh a number of factors, including: (1) "whether a stay would unduly prejudice or present a clear tactical advantage to the non-moving party;" (2) whether denial of the stay would create "a clear case of hardship or inequity for the moving party;" (3) "whether a stay would simplify the issues and the trial of the case;" and (4) "whether discovery is complete and a trial date has been set." *Id*. at *3.

Here, Plaintiff has failed to show sufficient hardship or inequity to justify a stay in this matter. *Hertz Corp. v. Gator Corp*., 250 F.Supp.2d 421, 424-25 (D.N.J. 2003) (holding the moving party bears the burden of demonstrating a "clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party"). Initially, there is no indication as to when, or if, the NLRB will conclude its allegedly ongoing investigation,[10] a factor that weighs

---

[10] On November 3, 2016, Plaintiff filed a Notice of Supplemental Information in Further Support of his Opposition to Defendants' Motion to Compel (Dkt. No. 39), indicating that, on September 30, 2016, the NLRB entered an order consolidating Kobren's and Daniel's cases against A-1 and scheduling a hearing for December 16, 2016. During oral argument, Plaintiff's counsel described the consolidated complaint as the NLRB's "interpretation" of the parties' agreement and urged the

9

against imposing a stay. *See Young v. City of Philadelphia*, 2008 WL 450103, at *2 (E.D.Pa. Feb. 15, 2008) (describing "an open-ended stay" as an "extraordinary remedy"). Nor is it a given that the results of the NLRB's allegedly ongoing investigation will have preclusive effect on this Court. *See Koontz v. U.S. Steel, LLC*, 2002 WL 398817, at *3 (E.D.Pa. Mar. 14, 2002) (rejecting "the contention that the decision of an ALJ, under appeal to the agency's appellate board and therefore, not yet affirmed by the board, constitutes a final decision" that would have preclusive effect on a pending district court matter). Furthermore, a stay of the motion to compel arbitration pending an ultimate disposition from the NLRB would harm Defendants by forcing them to litigate these claims in court until the NLRB has "complete[d] its ongoing investigation" or the Third Circuit has conclusively ruled on the issue, effectively negating the potential benefits of the arbitration agreement to the parties and to judicial economy and efficiency.

For these reasons, the Court declines to stay this action pending a decision from the NLRB or Third Circuit. *Painters' Pension Trust Fund of Washington, D.C. & Vicinity v. Manganaro Corp.*, 693 F.Supp. 1222, 1225 (D.D.C. 1988) (problems associated with inconsistent verdicts "cannot by [them]selves mandate that the court discontinue its proceedings"). Accordingly, the Court will enforce the parties' agreement to arbitrate according to its terms.

### B. Enforceability of Cost-Splitting Provision

Plaintiff argues the arbitration agreement here should not be enforced because its requirement that the costs of arbitration will be shared equally by the parties impairs effective prosecution of Plaintiff's claims (and those of the putative class, too). (Dkt. No. 27 at pp. 3-6.)

---

Court to give "great deference" to that interpretation; *i.e.*, Plaintiff requests the Court find the parties' agreement violates the NLRA based exclusively on the unadjudicated allegations in the complaint. For reasons that should be obvious, the Court declines to do so and finds such allegations are entitled to little deference at this stage of the NLRB proceedings.

Defendants respond that Plaintiff's "effective vindication" argument ignores the qualifying language of the parties' agreement that provides the cost of the arbitration would only be shared "unless prohibited by law." (Dkt. No. 29, at pp. 2-7.) Defendants also point to the agreement's severability clause and argue that, if the cost-sharing provision is invalidated, it should simply be disregarded, resulting in Defendants' payment of all arbitration costs. (*Id*.)[11]

A party who has agreed to arbitrate disputes may nevertheless go to court if she demonstrates that she cannot vindicate her federal statutory rights in arbitration. *See Gilmer*, 500 U.S. at 28. The Supreme Court has found "the existence of large arbitration costs could preclude a litigant … from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000). This is because "[a]rbitration costs are directly related to a litigant's ability to pursue the[ir] claim." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 (3d Cir. 2002). The "party seeking to invalidate an arbitration agreement because arbitration would be prohibitively expensive bears the burden of showing this likelihood." *Spinetti v. Service Corp. Int'l*, 324 F.3d 212, 217 (3d Cir. 2003) (citing *Green Tree*, 531 U.S. at 92); *see also Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 284-85 (3d Cir. 2004).

Kobren and Daniel attempt to carry this burden by submitting declarations detailing their income and expenses. (Dkt. Nos. 27-3, 27-4.) Kobren, for example, declares that he "get[s] paid only $9.00 per hour plus gratuity," his "monthly take home pay is approximately $2,500 per month" and is "currently in debt more than $15,000 for medical treatment for cancer" with debt service payments amounting to "between 40% and 60% of [his] net income each month." (Dkt.

---

[11] In their briefs, Defendants do not appear to contest Plaintiff's argument that, because of his financial condition, the cost-sharing provision is unconscionable as applied to him. (*See id*.) During oral argument, however, Defendants' counsel argued Plaintiff failed to meet his burden of proof, but conceded that a plaintiff can make such a showing by submitting a declaration(s), as both Kobren and Daniel did here.

11

No. 27-3 at ¶ 6.) Similarly, Daniel declares that he "make[s] $17.95 per hour for a little over thirty hours per week" and is "currently in debt more than $19,000 …, which constitutes approximately 40% of [his] net income each month." (Dkt. No. 27-4 at ¶ 6.) The declarations also set forth the potential fees if an arbitration were held before either the American Arbitration Association or JAMS. (*Id*. at ¶¶ 4-5 (setting forth potential fees for AAA and JAMS, respectively).) Both declarations conclude that, "[g]iven the potential size of my claim for unpaid overtime and my financial condition, I would not be able to afford to pursue my right to unpaid overtime pay through arbitration." (Dkt. Nos. 27-3 at ¶¶ 4-5, 7; 27-4 at ¶¶ 4-5, 7.)

The Court is satisfied with Plaintiff's showing that the cost-sharing provision of the arbitration agreement would be prohibitively expensive so as to impair the effective prosecution of Plaintiffs' claims. *See Spinetti*, 324 F.3d at 216 (finding "District Court's analysis properly followed the 'case-by-case' teachings of *Green Tree* on how to decide if a cost-splitting provision in an arbitration agreement denies potential litigants the opportunity to vindicate their statutory rights") (citing *Green Tree*, 531 U.S. at 92); *Scott Specialty Gases*, 283 F.3d at 610 (declining to "hold that the mere existence of a fee-splitting provision in an agreement would satisfy the claimant's burden to prove the likelihood of incurring prohibitive costs under *Green Tree*" and remanding to district court to "give [plaintiff] the opportunity to prove, as required under *Green Tree*, that resort to arbitration would deny her a forum to vindicate her statutory rights.") (citations omitted).

As Defendants correctly note, the cost-sharing provision expressly applies only "unless prohibited by law." Under such circumstances, the Employee Notice & Acknowledgements contains an explicit severability clause stating: "If applicable law requires provisions in an arbitration agreement, which are different from what is included here, they will be deemed

incorporated to the minimum extent required" and, further, "[i]f any part is unenforceable, the rest will still be enforceable." (Dkt. No. 23-1 at Ex. B.)

This Court is required to enforce the parties' agreement to arbitrate according to its terms. 9 U.S.C. § 2; *CompuCredit*, 132 S.Ct. at 669 (interpreting FAA to "require[] courts to enforce agreements to arbitrate according to their terms"). In doing so, there is little doubt that the arbitration agreement in the Employee Notice & Acknowledgements, shorn of the cost-sharing provision, is enforceable under the FAA. *Spinetti*, 324 F.3d at 213-14, 218-23 (affirming district court's determination to sever the unenforceable cost-sharing provisions and compel arbitration under remaining terms of parties' contract because its primary purpose was "to provide a mechanism to resolve employment-related disputes" and emphasizing that "[y]ou don't cut down the trunk of a tree because some of its branches are sickly."); *see also Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 683 n.3 (8th Cir. 2001) (noting the parties' agreement contained an explicit clause providing for severability and explaining that "[s]evering the … clause is consistent with the terms of the contract, the intent of the parties, [state] contract law, and the FAA's policy favoring the enforcement of arbitration agreements"); *Girodano v. Pep Boys – Manny, Moe & Jack, Inc.*, 2001 WL 484360, at *6 (E.D.Pa. Mar. 29, 2001) (finding presence of a severability clause is not decisive on its own, but merely leaves "little doubt" as to the enforceability following a severance). The result in this case, then, is that Defendants shall bear the costs of arbitration and the filing fees over and above the applicable filing fees for which Plaintiff would be responsible were he filing his claim in federal court.

For the reasons stated above, the Order accompanying this Opinion shall provide that Defendants' motion to compel arbitration is **GRANTED** as to the Employee Notice & Acknowledgements, exclusive of the provision that the "costs of arbitration will be shared equally

by the parties," and require Defendants to bear the costs of arbitration and the amount of filing fees in excess of the cost of filing a complaint in federal court.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Compel Arbitration and Stay the Action is **GRANTED** as modified by this Opinion. An appropriate order will follow.

**Date: November 7, 2016**                               */s/ Brian R. Martinotti*_____
                                                                          **HON. BRIAN R. MARTINOTTI**
                                                                          **UNITED STATES DISTRICT JUDGE**